1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

11

| | |
|---|---|
| JESUS QUESADA, | Case No. 1:20-cv-01674-SAB |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 16, 17, 18) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

12
13
14
15
16
17

**I.**

18

**INTRODUCTION**

19      Jesus Quesada ("Plaintiff") seeks judicial review of a final decision of the Commissioner

20 of Social Security ("Commissioner" or "Defendant") denying his application for disability

21 benefits pursuant to the Social Security Act.  The matter is currently before the Court on the

22 parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A.

23 Boone.[1]  Plaintiff argues that: (1) the ALJ erred in the evaluation of Dr. Hoffman's medical

24 opinion; and (2) the ALJ erred in evaluating and disregarding Plaintiff's testimony.  (ECF No.

25 16.)  For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

26 / / /

27 / / /

28

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 9, 10.)

## II.

## BACKGROUND

### A.      Procedural History

On December 18, 2017, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and on May 30, 2017, Plaintiff filed a Title XVI application for supplemental security income, alleging a period of disability beginning on January 1, 2013.  (AR 218-231.)  Plaintiff's application was initially denied on January 29, 2018, and denied upon reconsideration on April 24, 2018.  (AR 113-117, 120-125.)  Plaintiff requested and received a hearing before Administrative Law Judge Erin Justice (the "ALJ").  Plaintiff appeared for a hearing before the ALJ on January 29, 2020.  (AR 31-49.)  On February 11, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 12-30.)  The Appeals Council denied Plaintiff's request for review on September 20, 2020.  (AR 1-6.)

On November 24, 2020, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On October 22, 2021, Defendant filed the administrative record ("AR") in this action.  (ECF No. 11.)  On February 17, 2022, Plaintiff filed an opening brief.  (Pl.'s Opening Br. ("Br."), ECF No. 16.)  On March 21, 2022, Defendant filed an opposition brief.  (Def.'s Opp'n ("Opp'n"), ECF No. 17.)  On April 4, 2022, Plaintiff filed a reply brief.  (Pl.'s Reply ("Reply"), ECF No. 18.)

### B.      The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, March 9, 2020:

- The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.

- The claimant has not engaged in substantial gainful activity since January 1, 2013, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

- The claimant has the following severe impairments: anxiety, depression, and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

- The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

- After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform work that can be learned in two months.  The claimant can have less than occasional interaction with coworkers, supervisors, and the public.  The claimant needs a five-minute break after every two hours of work.  The claimant can tolerate occasional changes in the workplace.

- The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

- The claimant was born on June 3, 1975 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

- The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

- Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

- The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 15-25.)

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant

must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

1  scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

2  (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which,

3  considering the record as a whole, a reasonable person might accept as adequate to support a

4  conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

5  Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

6          "[A] reviewing court must consider the entire record as a whole and may not affirm

7  simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting

8  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

9  this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

10  for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

11  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

12  upheld.").

13                                              IV.

14                              DISCUSSION AND ANALYSIS

15          Plaintiff argues: (1) the ALJ erred in the evaluation of Dr. Hoffman's medical opinion;

16  and (2) the ALJ erred in evaluating and disregarding Plaintiff's testimony.  For the reasons set

17  forth below, the Court finds the ALJ erred in the evaluation of Dr. Hoffman's opinion, and the

18  Court need not reach the second (and tangential) challenges from Plaintiff.

19          A.      The ALJ's Evaluation of Dr. Hoffman's Opinion

20          Plaintiff argues the ALJ erred in weighing the opinion of Dr. Gary Hoffman ("Dr.

21  Hoffman").  (Br. 21-25.)

22          1.      The 2017 Regulatory Framework for Weighing Medical Opinions

23          The Social Security Administration revised its regulations regarding the consideration of

24  medical evidence — applying those revisions to all claims filed after March 27, 2017.  See

25  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL

26  168819, *5844 (Jan. 18, 2017).  Plaintiff filed her claim after March 27, 2017, therefore, the

27  revised regulations apply.  See 20 C.F.R. § 404.1520c.  The Ninth Circuit has now expressly held

28  that the 2017 regulations supersede the previous standards enunciated by the Ninth Circuit under

previous regulatory standards:

> As a threshold matter, we must decide whether recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide "specific and legitimate" reasons for rejecting an examining doctor's opinion. We conclude that they do. For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence. Because substantial evidence supports the ALJ's decision here, we affirm.

Woods v. Kijakazi, 32 F.4th 785, 787 (9th Cir. 2022).

Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[3] Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. See 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

"When a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a)-(c)(1)-(5), 416.920c(a)-(c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her

---

[3]  The regulations at 20 C.F.R. § 404.1501 et seq., reference the regulations which apply to disability insurance benefits, and the regulations at 20 C.F.R. § 416.901 et seq. apply to supplemental security income, though the regulations are generally the same for both types of benefits.

medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  Regarding the consistency factor, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Accordingly, the ALJ must explain in the decision how persuasive they find a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Additionally, the ALJ "may, but [is] not required to, explain how [they] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).  Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).

The "treating source rule" allowed an ALJ to reject a treating or examining physician's uncontradicted medical opinion only for "clear and convincing reasons," and allowed a contradicted opinion to be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record.  See, e.g., Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  The revised regulations no longer use the term "treating source," but instead use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use.  See 20 C.F.R. §§ 404.1520c, 416.920c; 82 FR 5844-01, 2017 WL 168819, at *5852–53 (eliminating "treating source rule").  In sum, the requirement that an ALJ provide "clear and convincing" or "specific and legitimate" reasons for discounting a treating or examining opinion no longer applies, as this "measure of deference to a treating physician is no longer applicable under the 2017 revised regulations." Jean T. v. Saul, No. 20CV1090-RBB, 2021 WL 2156179, at *5 (S.D. Cal. May 27, 2021); see also, e.g., Jones v. Saul, No. 2:19-CV-01273 AC, 2021 WL 620475, at *7-10 (E.D. Cal. Feb. 17, 2021) (finding the new regulations valid and entitled to Chevron deference, and because prior case law "is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override" it); Meza v. Kijakazi, No.

1:20-CV-01216-GSA, 2021 WL 6000026, at *6 (E.D. Cal. Dec. 20, 2021) ("courts in this circuit have rejected the notion that the treating physician rule still pertains to claims filed after March 27, 2017").

Nonetheless, the new regulations still require the ALJ to explain his reasoning and to specifically address how he considered the supportability and consistency of the opinion.  20 C.F.R. §§ 404.1520c, 416.920c; see P.H. v. Saul, No. 19-cv-04800-VKD, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s] all of the medical opinions.") (citation omitted).  As always, the ALJ's reasoning must be free of legal error and supported by substantial evidence.

### 2.   Dr. Hoffman's Opinions

On February 9, 2018, treating psychologist Dr. Hoffman completed a Mental Residual Functional Capacity Questionnaire.  (AR 662-664.)  Dr. Hoffman had been treating Plaintiff since October 18, 2016, every two to four weeks.  (AR 662.)  He diagnosed Plaintiff with Social Anxiety Disorder and Intermittent Explosive Disorder; assessed Plaintiff with poor interpersonal functioning and considered Plaintiff's prognosis as "fair".  (Id.)  Plaintiff was prescribed Paxil for anxiety and depression, Prazosin for nightmares, and Klonopin (Clonazepam) for anxiety.  Dr. Hoffman opined that Plaintiff's mental impairments did not preclude his ability to understand and remember very short and simple instructions, but that he would be precluded from carrying them out for five percent of the workday.  (AR 662-663.)  He opined that Plaintiff would be precluded for 10 to 15 percent of the workday in the following areas: maintaining attention and concentration for extended periods of time; completing a normal workday and workweek and performing at a consistent pace without an unreasonable number of rest periods; interact appropriately with the general public; accept instructions and criticism from supervisors; get along with co-workers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior.  (Id.)  Dr. Hoffman further opined that Plaintiff's mental impairments would limit his ability to sustain an ordinary work routine without special

1   supervision for 10 percent of the workday.  (Id.)

2          In addition, Dr. Hoffman opined Plaintiff's mental impairments would likely cause

3   Plaintiff to be absent from work four or five days a month and unable to complete an eight-hour

4   workday for five days or more a month.  (AR 663-664.)  Dr. Hoffman opined Plaintiff does not

5   have reduced intellectual functioning and he is not a malingerer.  (AR 664.)  Dr. Hoffman

6   checked the boxes that he based his opinions on Plaintiff's history and medical file, his progress

7   and office notes, and his psychological evaluations.  (Id.)  Dr. Hoffman explained that Plaintiff

8   started his psychological treatment in 2014 at another clinic (Kings View), and opined his

9   assessed limitations began in 2014.  (Id.)

10         On December 10, 2019, Dr. Hoffman completed an updated Mental Residual Functional

11  Capacity Questionnaire.  (AR 665-667.)  At that point, Dr. Hoffman had treated Plaintiff for over

12  three years with 43 therapeutic sessions since October 18, 2016.  (AR 665, 667.)  Dr. Hoffman

13  diagnosed Plaintiff with Posttraumatic Stress Disorder, Panic Disorder with Agoraphobia, and

14  Intermittent Explosive Disorder.  Dr. Hoffman assessed Plaintiff's prognosis as "poor" to "fair"

15  as Plaintiff was "unable to elevate [his] baseline of impaired coping [during] past 3 years of

16  treatment."  (AR 665.)  Dr. Hoffman stated the known side effects of Plaintiff's medications are

17  lethargy, drowsiness, and fatigue.  Dr. Hoffman opined that Plaintiff's mental impairments

18  would not preclude his ability to understand, remember, and carry out short and simple

19  instructions and make simple work-related decisions.  (AR 665-666.)  However, Dr. Hoffman

20  further opined Plaintiff would be precluded for 15 percent or more of an eight-hour workday of

21  performing activities within a schedule and maintaining regular attendance and punctuality;

22  sustain an ordinary routine without special supervision; work in coordination with, or in

23  proximity to, others without being distracted by them; and completing a normal workday and

24  workweek without interruptions from psychologically based symptoms and perform at a

25  consistent pace without an unreasonable number of rest periods.  (AR 666.)

26         With respect to social interaction in the workplace, Dr. Hoffman opined that Plaintiff's

27  mental impairments would preclude him for interacting appropriately with the general public for

28  between 10 or 15 percent or more of the workday.  (AR 666.)  Dr. Hoffman further opined

1   Plaintiff would be precluded from getting along with coworkers without distracting them or

2   exhibiting behavioral extremes and accepting instructions and criticism from supervisors for 15

3   percent of a workday.  (Id.)  Dr. Hoffman also opined Plaintiff's ability to maintain socially

4   appropriate behavior would be precluded for 10 percent of the eight-hour day; that Plaintiff's

5   ability to respond appropriately to changes in the work setting would be precluded for 10 percent

6   of the workday; and his ability to set realistic goals or make plans independently of others would

7   be precluded for 15 percent or more of an eight-hour day.  Dr. Hoffman opined Plaintiff would

8   likely be absent from work, and unable to complete an eight-hour workday, five days or more per

9   month due to his mental impairments.  (AR 667.)  Dr. Hoffman assessed Plaintiff's intellectual

10  functioning to be within normal limits and that he was not a malingerer.  (Id.)  Dr. Hoffman

11  specified that he based his opinions as to Plaintiff's impairments and functionality on his

12  progress notes and psychological evaluations.  (Id.)

13          3.      The ALJ Erred by Failing to Properly Address the Supportability Factor

14          The ALJ weighed Dr. Hoffman's opinions as follows.

15                  Dr. Hoffman's opinion is not supported by a citation to any
                    specific objective medical findings.  In addition, Dr. Hoffman's
16                  opinion regarding the claimant's social limitations is not consistent
                    with treatment records demonstrating the claimant to be pleasant
17                  and cooperative. (Ex. 1F/8; Ex. 2F/110, 114, 120, 126, 128). Dr.
                    Hoffman's opinion regarding the claimant's ability to maintain
18                  attention and concentration for extend periods of time is not
                    consistent with the claimant's reports of engaging in activities that
19                  require sustained attention, such as reading and watching
                    television. (Ex. 5E/6). Therefore, the undersigned does not find the
20                  opinion of Dr. Hoffman persuasive as it is unsupported by
                    reference to any specific objective medical findings, inconsistent
21                  with the claimant's treatment records, and inconsistent with the
                    claimant's own reports.
22

23  (AR 23.)  Thus, the ALJ found Dr. Hoffman's opinion(s) to be not supported by citation to

24  specific objective medical findings.

25          Plaintiff argues it was error as to the supportability prong because while the ALJ stated

26  the opinion was not supported by a citation to any specific objective medical findings, the check-

27  box questionnaires do not exist in a vacuum, and Dr. Hoffman provided well over a hundred

28  pages of his Clinic/Office Notes spanning more than three years in support of his opinions.  (AR

537-576, 619-626, 669-698, 703-708.)  Plaintiff argues that a review of Dr. Hoffman's treatment notes reflects support for his opinions, including, but not limited to: reports of being always "on the lookout for someone to come after [him]," Dr. Hoffman noting Plaintiff scans the room during therapy, and Dr. Hoffman's assessment that Plaintiff's thought content is "marked by rumination on years of stressful incidents" (AR 533-534); persistent reports to Dr. Hoffman of nightmares, flashbacks, "paranoia", and panic (AR 532, 533, 556, 560, 568, 619, 669, 696-698, 703, 706); noting Plaintiff avoided the check-in station at Adventist Health "due to perceived negativity of the front desk staff" (AR 541); noting Plaintiff reported increased anxiety at being in the waiting room because other males were present (AR 548-551); reports having a "confrontation" at a gas station with a "youngster" in 2017 (AR 544-547); noting Plaintiff continued to struggle with leaving the house and isolated himself in his room at his mother's home (AR 532-533, 552, 568, 604, 619); noting Plaintiff's attendance at a family graduation resulted in multiple panic attacks with associated nausea and dizziness (AR 568, 619, 691); and noting Plaintiff had another "confrontation in the community" in 2019 with associated increased anxiety, insomnia, flashbacks and nightmares (AR 706).  (Br. 22-23.)

Defendant argues that "[w]hen a medical source offers an opinion in a check-the-box form, and offers no explanation for the conclusions set forth in such a cursory form, the ALJ could reasonably find that opinion unpersuasive."  (Opp'n 10.)  Defendant also argues that while Plaintiff argues Dr. Hoffman did not need to cite to evidence because of treatment notes, Dr. Hoffman's treatment notes showed normal findings, and the ALJ "cited some of these records earlier" in the opinion.  (Opp'n 10, citing AR 21, 669.)  Defendant contends that there is no error here as if a doctor fails to explain a check-box form, and his treatment records fail to offer clear support for that opinion, the ALJ may reasonably find the opinion unpersuasive.  (Opp'n 10-11.)

Plaintiff is correct that the fact that Dr. Hoffman presented his opinions in a check-box form does not necessarily render his opinion any less valid.  See Trevizo v. Berryhill, 871 F.3d 664, 677 (9th Cir. 2017) ("Finally, there is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments.").  Prior to the 2017

1  regulatory changes, it was established that an ALJ may not reject an opinion solely for being in

2  such form.  See Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014) (finding ALJ "failed to

3  recognize that the opinions expressed in check-box form in the February 2008 PFC

4  Questionnaire were based on significant experience with Garrison and supported by numerous

5  records, and were therefore entitled to weight that an otherwise unsupported and

6  unexplained check-box form would not merit."); Esparza v. Colvin, 631 F. App'x 460, 462 (9th

7  Cir. 2015) ("Although the treating physician's opinions were in the form of check-

8  box questionnaires, that is not a proper basis for rejecting an opinion supported by treatment

9  notes . . . [t]he treating physician's extensive notes are consistent with the check-box forms and

10  provide the basis for his opinions.").

11      The Court presumes that under the new regulatory scheme, an ALJ may discount an

12  unexplained check box form opinion that is unsupported by the treatment records from that

13  medical provider, or inconsistent with the records and other evidence.  See id.; Flowers v.

14  Colvin, No. 3:16-CV-05025 JRC, 2016 WL 4120048, at *3 (W.D. Wash. Aug. 3, 2016) ("As an

15  initial matter, discrediting a doctor's opinion simply because he used a check box form is not

16  valid unless that opinion is inconsistent with the underlying clinical records . . . to the extent that

17  the ALJ discounted Dr. Trowbridge's opinion simply because the opinion was contained on

18  a check box form, the ALJ committed legal error.").  The Court also presumes that even after the

19  2017 regulations, an ALJ still cannot simply reject a physicians' opinion simply for being in such

20  form, when the opinion is in fact supported by the treatment record, and consistent with other

21  evidence in the record.

22      Here, the ALJ did not mention the fact the opinion was a check-box form.  However, the

23  ALJ rejected the opinion as unsupported because it did not itself contain citations to objective

24  medical records to support the opined limitations.  Given the form of the opinion, the Court finds

25  the above caselaw proscribing the discrediting of a doctor's opinion simply because they used a

26  check box type form, to be applicable and relevant to the ALJ's findings as to Dr. Hoffman's

27  opinions here, and the parties' arguments.

28      This Court recently recognized there may be overlap of findings that are relevant to both

the supportability and consistency factors, and may still be appropriate findings to support an ALJ's decision to discount a medical opinion.  See Frausto v. Commissioner Social Security, No. 1:21-CV-01132-SAB, 2022 WL 4793999, at *6 (E.D. Cal. Oct. 3, 2022) ("The Court finds that while there may be overlap between the ALJ's findings that could be applied to either the supportability or consistency factors, the Court finds the ALJ's findings as to both supportability and consistency to be supported by substantial evidence in the record.").  This Court also recently affirmed an ALJ's opinion where the ALJ's citations to records, and findings regarding such records in another portion of an opinion, were argued to support findings made in another portion of the opinion pertaining to the weighing of a medical opinion.  See Cox v. Comm'r of Soc. Sec., No. 1:20-CV-01520-SAB, 2022 WL 3691309, at *11 (E.D. Cal. Aug. 25, 2022) ("In addition to the above records specifically cited by the ALJ that the Court finds highly supportive of the ALJ's findings, Defendant also highlights records of additional support in records cited by the ALJ . . . Plaintiff does not directly dispute this evidentiary support, but in reply generally argues that the Defendant cannot use post-hoc arguments and records not cited by the ALJ. However, these records were cited by the ALJ, somewhat generally but not lacking in support throughout the broad swath, and Plaintiff mounts no more than a generalized statement in reply that does not specifically address the Defendant's arguments.").

However, in this instance, the Court will not strain to pull isolated and not clearly relevant citations to Dr. Hoffman's records elsewhere in the opinion pertaining to a general summary, or in the small number of Dr. Hoffman's records cited in support of the consistency prong, to find the supportability finding was supported by substantial evidence.  The Court largely agrees with Plaintiff's contentions in reply that the Defendant essentially only refers to the ALJ's consistency findings to argue the supportability finding was supported by substantial evidence.  Excluding records in the general summary not connected to ALJ findings, the Defendant does not appear to cite any records from Dr. Hoffman that were actually cited by the ALJ for a specific finding as to the record, except for one.  (See Opp'n 10 ("Plaintiff argues that Dr. Hoffman did not need to cite evidence because he had treatment notes, but those notes did not support his claim, as the ALJ noted.  They showed normal findings instead.  Indeed, the ALJ

1  cited some of these records earlier.")  Defendant, despite stating "records" plural (Opp'n 10),

2  only cites the one record here, a visit where Dr. Hoffman noted positive mood and energy, and

3  feeling more optimistic, which the ALJ referenced earlier in the opinion when stating "[t]he

4  claimant's alleged inability to work, in part, due to mood abnormalities is not consistent with his

5  reports of a positive mood and energy to his treatment providers in July of 2019." (AR 21, citing

6  AR 669.)  Thus, significantly, even this finding and record cited by the ALJ in another portion of

7  the record pertains to a finding regarding consistency, and thus the Court will not strain to find

8  the isolated citation to affirm the ALJ's supportability finding.  In this regard, the issues here are

9  somewhat similar to Jennifer W., and the Court did consider the citations to the treatment records

10  elsewhere in the opinion.  However, in that case, in addition to finding the lack of support from

11  the check-box form, the ALJ additionally found the opinion not supported by the treatment

12  records, and the court found sufficient reference by the ALJ to that specific provider's treatment

13  records throughout the opinion:

> First, the ALJ found the opinion was in a check-box form and lacked a supporting narrative or explanation. *Id.* Supportability is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The opinion consists only of check boxes and does not contain any explanation or citations to supporting evidence. Tr. 553-56. Plaintiff argues the opinion is supported by the treatment notes, however the ALJ reasonably found the opinion is also not supported by the treatment records, as discussed *infra.* . . .

> . . . Third, the ALJ found the opinion was not supported by the treatment records.  . . . While treatment records document some abnormalities, the ALJ noted Plaintiff often had many normal findings on mental status examination, and the level of abnormalities was not consistent with disabling mental health limitations. Tr. 22-24. The ALJ found the opinion was also not consistent with Mr. Varada's own treatment notes. Tr. 25. Plaintiff argues the ALJ failed to address the providers' notes, ECF No. 16 at 9-10No. 16 at 9-10, however the ALJ's decision contains analysis of the providers' treatment notes in other portions of the decision, Tr. 22-24. As an ALJ's decision should be read as a whole, the Court considers the ALJ's overall analysis of the medical evidence. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004).

1   Jennifer W. v. Kijakazi, No. 4:20-CV-05234-MKD, 2022 WL 2834011, at *6 (E.D. Wash. May

2   19, 2022).  The Court finds insufficient support elsewhere in the opinion for the Court to make

3   such a conclusion.  Id.; see also Cox, 2022 WL 3691309, at *11.

4          Finally, while the ALJ states Dr. Hoffman did not cite to any specific objective medical

5   records, and while the above caselaw acknowledges the form of the check-box opinion does not

6   really lend itself to detailed supportive descriptions, Dr. Hoffman did expressly check the boxes

7   indicating that the first February 9, 2018 opinion was based on the history and medical file, the

8   progress and office notes, and the psychological evaluations and reports/opinions (AR 664); and

9   checked the boxes that the December 10, 2019 opinion was based on progress and office notes,

10  as well as psychological evaluations and reports/opinions.  (AR 667.)  The ALJ did not address

11  the Doctor's express statements in the opinions that they were based on such records, and did not

12  adequately explain why these opinions were not supported, given the requirements of the

13  regulations, and the Ninth Circuit's admonitions concerning rote discounting of check-box

14  medical opinions without making a determination as to whether the opinions are in fact

15  supported by the treatment records.

16         For the above explained reasons, the Court determines the ALJ's findings regarding the

17  supportability of Dr. Hoffman's opinions are not supported by substantial evidence, and do not

18  satisfy the requirements of the 2017 regulations.  20 C.F.R. §§ 404.1520c(c)(1) (The "more

19  relevant the objective medical evidence and supporting explanations presented by a medical

20  source are to support his or her medical opinion(s) or prior administrative medical finding(s), the

21  more persuasive the medical opinions or prior administrative medical finding(s) will be.");

22  Woods, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or

23  treating doctor's opinion as unsupported or inconsistent without providing an explanation

24  supported by substantial evidence.  The agency must 'articulate ... how persuasive' it finds 'all of

25  the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain

26  how [it] considered the supportability and consistency factors' in reaching these findings."); E.S.

27  v. Kijakazi, No. 20-CV-06550-JCS, 2022 WL 4292333, at *12 (N.D. Cal. Sept. 16, 2022) ("At

28  the        outset,        the        Court        notes        that        the        ALJ        blurred        the        analysis        of

the supportability and consistency factors as to both PA Yeh's and the state agency consultants' opinions, failing to articulate which evidence supported the findings regarding each factor. A.R. 22; *see Woods* . . . Such conflation of the supportability and consistency factors rendered the ALJ's analysis insufficient under the revised articulation requirements."); Labryssa v. Kijakazi, No. 21-CV-04233-BLF, 2022 WL 2833981, at *7 (N.D. Cal. July 20, 2022) ("The ALJ's apparent analysis of the 'supportability' factor is limited to the statement 'the doctor did not really provide much in the way of explanation as to why [the marked] level of limitation was appropriate.' AR22.  This fails to provide any substantive reason for rejecting Dr. Catlin's analysis, which spanned multiple pages and broke down her ultimate conclusions on impairment into 23 different categories . . . the ALJ's single-sentence statement fails to substantively engage with Dr. Catlin's assessment."); Sam-Chankhiao v. Kijakazi, No. 2:20-CV-0186 DB, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022) (in declining to credit opinion, "ALJ stated simply, 'he cited imaging studies revealing only mild to moderate abnormalities, did not support his speculative assessment with any treatment evidence or objective clinical findings and he is a PCP and not a specialist[,]' . . .[h][owever, Dr. Francisco's opinion was supported by objective clinical findings, specifically citation to an MRI . . . ALJ does not elaborate as to why these findings undermine Dr. Francisco's opinion [and] [m]ost importantly, the ALJ's vague and conclusory discussion of Dr. Francisco's opinion fails to discuss the necessary factors of supportability and consistency."); Carrie D. v. Kijakazi, No. 1:20-CV-03227-LRS, 2022 WL 2901010, at *6 (E.D. Wash. June 6, 2022) ("The ALJ's first two reasons, failure to describe workplace functional limitations and brevity of the statement, speak to the supportability of the opinion under 20 C.F.R. § 404.1520c(c)(1). . . .[but ALJ only] supported her findings with the general statement that the record 'contains generally normal interactive findings such as normal speech and affect,' and that Dr. King's own records fail to support limitations with social interactions . . . ALJ provided no citation to the record in support of these statements [and] [t]his is an insufficient explanation under *Woods.*").

Accordingly, the Court finds the ALJ erred in weighing Dr. Hoffman's opinions, and the Court now turns to consider whether remand is appropriate, and to address the remaining

1  challenges mounted by Plaintiff.

2  **B.      The Court finds Remand is Appropriate**

3  The ordinary remand rule provides that when "the record before the agency does not

4  support the agency action, . . . the agency has not considered all relevant factors, or . . . the

5  reviewing court simply cannot evaluate the challenged agency action on the basis of the record

6  before it, the proper course, except in rare circumstances, is to remand to the agency for

7  additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

8  1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. Treichler, 775 F.3d at

9  1099. Under the Social Security Act "courts are empowered to affirm, modify, or reverse a

10 decision by the Commissioner 'with or without remanding the cause for a rehearing.' "

11 Garrison, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)). The decision to remand for benefits is

12 discretionary. Treichler, 775 F.3d at 1100. In Social Security cases, courts generally remand

13 with instructions to calculate and award benefits when it is clear from the record that the

14 claimant is entitled to benefits. Garrison, 759 F.3d at 1019. Even when the circumstances are

15 present to remand for benefits, "[t]he decision whether to remand a case for additional evidence

16 or simply to award benefits is in our discretion." Treichler, 775 F.3d at 1102 (quoting Swenson

17 v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

18 The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which

19 must be satisfied in order for a court to remand to an ALJ with instructions to calculate and

20 award benefits: (1) the record has been fully developed and further administrative proceedings

21 would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for

22 rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly

23 discredited evidence were credited as true, the ALJ would be required to find the claimant

24 disabled on remand." Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). The credit as true

25 doctrine allows "flexibility" which "is properly understood as requiring courts to remand for

26 further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an

27 evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled.

28 Garrison, 759 F.3d at 1021.

1    The Court finds that based on the ALJ's opinion and review of the record, significant

2    doubts remain as to whether Plaintiff is in fact disabled.  The Court orders this action remanded

3    for further administrative proceedings consistent with this opinion, and to further develop the

4    record as deemed necessary.

5         1.    Plaintiff's other Challenges

6         The Court declines to make a determination of whether the ALJ erred as to the

7    consistency prong of the analysis of Dr. Hoffman's opinions.  See Woods, 32 F.4th at 792 ("The

8    agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor

9    or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability

10   and consistency factors' in reaching these findings.").  The Court does not find it necessary to

11   make a finding as to whether the ALJ provided clear and convincing reasons for discounting

12   Plaintiff's symptom testimony.  The ALJ shall reevaluate the need for making any such

13   additional findings.  See Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir.

14   2002) ("The clear and convincing standard is the most demanding required in Social Security

15   cases.").

16        Further, the ALJ shall evaluate the need for evaluating the statements of Mr. Quesada's

17   mother, and PA-C Ayuen's treatment notes reflecting Plaintiff.  (See Br. at 24.)  In a footnote,

18   Plaintiff argues that the ALJ made no reference to Ms. Garcia's statements in the decision

19   whatsoever, and proffers this "silent disregard of lay witness testimony constitutes legal error,"

20   in of itself. (Br. 24 n.8.)  Defendant did not address this challenge in opposition, and the Plaintiff

21   did not address the Defendant's lack of opposition in reply.  The ALJ shall consider the need for

22   addressing this evidence, however, generally, the Court is disinclined to entertain substantive

23   legal challenges or arguments that are solely raised in a footnote.  See First Advantage

24   Background Servs. Corp. v. Private Eyes, Inc., 569 F.Supp. 2d 929, 935 n.1 (N.D. Cal. 2008)

25   ("A footnote is the wrong place for substantive arguments on the merits of a motion, particularly

26   where such arguments provide independent bases for dismissing a claim not otherwise addressed

27   in the motion."); see also United States v. Svoboda, 347 F.3d 471, 480 (2d Cir. 2003) (an

28   argument that is mentioned only in a footnote is not adequately raised).  Plaintiff is advised

courts are not mind readers and a "party has a duty 'to spell out its arguments squarely and distinctly.... [rather than being] allowed to defeat the system by seeding the record with mysterious references ... hoping to set the stage for an ambush should the ensuing ruling fail to suit.' " McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991) (quoting Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 990 (1st Cir.1988).  Substantive arguments should be raised within the brief itself.

**V.**

**CONCLUSION AND ORDER**

Based on all of the foregoing reasons, the Court finds the ALJ's weighing of Dr. Hoffman's opinions was erroneous and not supported by substantial evidence in the record.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order.  It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Jesus Quesada and against Defendant Commissioner of Social Security.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   __October 14, 2022__                         _____

                                                     UNITED STATES MAGISTRATE JUDGE